FILED
SUPERIOR COURT
OF GUAM

2021 JAN 13 AM 11: 16

CLERK OF COURT

By:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, ) | CRIMINAL CASE NO. CF0324-18-01 |
| ) | |
| v. ) | |
| ) | DECISION AND ORDER DENYING |
| JEREMY ALLEN EVARISTO, ) | DEFENDANT'S MOTION TO RELEASE |
| DOB: 04/24/1991 ) | ON PERSONAL RECOGNIZANCE OR |
| ) | THIRD PARTY CUSTODIANS |
| DEFENDANT. ) | |
| ) | |

## Introduction

This matter is before the Honorable Maria T. Cenzon on Defendant Jeremy Allen Evaristo's ("Defendant") Motion to Release on Personal Recognizance or Third Party Custodians ("Motion"). At the Zoom hearing on November 23, 2020, Defendant was present with his counsel John Terlaje. The People of Guam were represented by Assistant Attorney General and Chief Prosecutor Basil O'Mallan. Also present were proposed Third Party Custodians (TPCs) Louvana Quenga and Kannalyn Quenga. Having reviewed the pleadings, parties' oral arguments, the record, and relevant law, the Court hereby **DENIES** Defendant's Motion.

## Background

Defendant was indicted of the following charges: 1) ATTEMPTED MURDER (as a First Degree Felony), with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony and NOTICE: Commission of a Felony While on Felony Release; 2) FIRST DEGREE ROBBERY (as a First Degree Felony) with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony and NOTICE: Commission of a Felony While on Felony Release; 3) ARMED CARJACKING (As a First Degree Felony) with a

Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony, Special Allegation: Vulnerable Victim (Tourist) and NOTICE: Commission of a Felony While on Felony Release, 4) SECOND DEGREE ROBBERY (As a Second Degree Felony) with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony, NOTICE: Commission of a Felony While on Felony Release; 5) SECOND DEGREE ROBBERY (As a Second Degree Felony) with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony, Special Allegation: Vulnerable Victim (Tourist) and NOTICE: Commission of a Felony While on Felony Release; 6) THEFT (As a Second Degree Felony) with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony, NOTICE: Commission of a Felony While on Felony Release; 7) THEFT (As a Second Degree Felony) with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony, Special Allegation: Vulnerable Victim (Tourist) and NOTICE: Commission of a Felony While on Felony Release; 8) THEFT (As a Third Degree Felony) with a Special Allegation of Possession or Use of a Deadly Weapon in the Commission of a Felony, Special Allegation: Vulnerable Victim (Tourist) and NOTICE: Commission of a Felony While on Felony Release; and, 9) THEFT (As a Misdemeanor).

These charges arise out of a string of incidents between May 16, 2018 and May 21, 2018. On May 16, 2018, Defendant is alleged to have attempted to cause the death of Samuel Siquig by firing several shots at him while Siquig was in a cash booth at Lucky Land Game Room in Dededo, Guam, during an alleged robbery of the game room.[1] During the incident, Defendant is alleged to have struck Siquig on his head with a baton causing a laceration to the top of his head. *Magistrate's Complaint* (May 24, 2018).

---

[1] "[T]he footage clearly shows that Samuel first attempted to hide during the attack and that the males could not forcibly enter the cashier's booth, despite kicking the door. In response the male with the gun [alleged to be Defendant] puts his hand and gun through the cashier's window and fires at Samuel. The video shows Samuel moving to avoid the gunfire and clearly shows the male's deliberately moving the gun to aim at Samuel." *Decl. to Magis. Complaint* (May 24, 2018).

On or about May 18, 2018, Defendant is alleged to have robbed Huyng Chul Seo ("Seo"), a cashier at Palms Market in Yigo, Guam, by pointing a black pistol at Seo and demanding that he give him money and then shooting at the wall behind Seo. *Id.*

On or about May 21, 2018, Defendant, together with his co-defendant Jesse Joe San Nicolas Delgado,[2] is further alleged to have stolen property belonging to a tourist Tik Fung Chan ("Chan")(reportedly a Chinese national who provided a hotel as his residence) by pointing a black handgun at Chan when he attempted to stop the pair from taking his belongings (including a camera worth approximately $2,500.00, 2 Apple iPhone Plus phones each worth $1,000, US currency, credit cards and identification cards) while Chan and his wife were at the beach in Ritidian, Guam. *Id.*

On or about May 21, 2018, Defendant is alleged to have, together with Delgado, robbed Chak Man Tse ("Tse")(a Chinese national who provided a hotel as his residence) at gunpoint along Route 3A towards Ritidian Beach in Guam. *Id.* He is alleged to have taken a Paul Smith brand wallet worth $100.00 and $500.00 worth of US currency. *Id.*

Delgado was subsequently arrested and questioned and he admitted that he and Defendant robbed the Lucky Land Game Room on May 16 and that Defendant shot at the cash attendant twice after he refused to open the door. *Id.* Delgado also reported that the vehicle used in the game room robbery was stolen by Defendant earlier in the day. *Id.* The Magistrate's Declaration also avers that Defendant shot his gun inside the Palms Market during the robbery on May 18 and saw Defendant run out of the store with the cashier's tray in his arms. *Id.* Additionally, Delgado admitted that he was involved in the robbery of Chan at Ritidian Beach on May 21 and that Defendant had stolen the items from Chan at gunpoint. *Id.* Finally, Defendant and Delgado were involved in the carjacking/robbery of Tse and his wife in Ritidian, Guam and that Defendant was the driver as well as the gunman who robbed the couple at gunpoint. *Id.* The

---

[2] Co-defendant entered a Guilty plea to on August 31, 2018, before the Honorable Judge Elyze M. Iriarte. This court severed the original case CF0324-18 from the instant matter after Delgado entered his guilty plea before Judge Iriarte. *Order for Severance* (Feb. 25, 2019) CF0324-18 remains assigned to Judge Iriarte during the pendency of this severed matter which is pending Delgado's sentencing under the cooperation plea agreement.

Declaration does state, however, that Tse and his wife reported that the gunman was not the driver, but the passenger of the vehicle – Delgado. *Id.* Defendant was on pre-trial release in felony case CF0343-17 at the time of the alleged offenses. *Id.*

On November 23, 2020, the Court heard oral argument on the Motion. Defendant seeks release on his own recognizance or, in the alternative, to TPCs. During the hearing, the Court addressed the proposed TPCs, who attested, under oath, to being able to supervise the Defendant and ensure his compliance with the pre-trial release conditions which may be ordered by the court should it release Defendant. The TPCs also confirmed that they are aware of personal liability for failure to report Defendant's violations, if any, and that they would be subject to contempt proceedings for any failure to report. *Minute Entry of Ex Parte Mot. to Release on Personal Recognizance or Third Party Custodian* at 10:26:55 to 10:32:10 (Nov. 23, 2020). The People oppose release on his own recognizance or to TPCs, as do the victims identified in the Indictment. *Id.* at 10:17:17 to 10:17:25. Defendant is currently on parole on prior felony cases CF0343-17 and CF0340-18. *Id.* at 10:23:29 to 10:24:10.

The trial of this matter was scheduled to commence on January 20, 2021; however, on January 12, 2021, during the Pre-Trial Conference of this matter, counsel for the Defendant indicated that an offer had been made by the People to resolve the matter without going to trial and requested a good cause continuance in order to meet with his client in person to discuss the plea offer. *Pre-Trial Conference* at 9:48:43 to 9:50:40 (Jan. 12, 2021). Counsel for Defendant indicates that, if accepted, the plea calls for "quite a bit of time." *Id.* at 9:52:58. This court granted the continuance, finding good cause to do so. *Id.* The court will issue new trial dates with sufficient time to allow counsel to meet with Defendant to discuss a resolution without trial. Defendant has waived his right to a speedy trial on September 1, 2018.[3]

<u>Law</u>

Title 8, Guam Code Annotated, Section 40.10 provides that "every person charged with an offense shall be ordered released pending trial in the manner and subject to the conditions

---

[3] *Stip. and Order RE: Continuance of Jury Selection and Trial* (Aug. 15, 2019).

provided by §§ 40.15 and 40.20." 8 GCA § 40.10. "Determinations as to bail conditions and amounts are not to be driven by the goal of keeping the accused incarcerated, but should rather be reached in consideration of the only authorized interests, *to wit*, ensuring the appearance of the accused and the safety of others." *People v. Song*, 2011 Guam 19 ¶ 11. A judge will not abuse its discretion in imposing bail and denying a Defendant's motion for release, so long as the Judge issues a decision detailing reasons for continuing the bail conditions as originally set. *People v. Bruneman*, 1996 Guam 3.

### A. Release on his own Recognizance under Section 40.15

Section 40.15 (b) requires as follows: "The judge shall order the person charged to be released on recognizance, *unless the judge determines*, in his discretion, on the basis of available information, that such a release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 8 GCA §40.15(b)(emphasis added). The law identifies several factors in making such a determination, which includes:

(1) the nature of the offense charged, the apparent possibility of conviction and the likely sentence;

(2) the history and characteristics of the person charged, including:
(i) length of his/her residence on Guam;
(ii) his/her employment status and history, and financial condition;
(iii) his/her family ties and relationships;
(iv) his/her reputation, character and mental and physical condition;
(v) his/her prior criminal record, if any, including any record of prior release on recognizance or on bail;
(vi) his/her history relating to drug or alcohol abuse;
(vii) the identity of the reasonable members of the community who will vouch for his/her reliability;
(viii) whether, at the time of the current offense or arrest, he/she was on probation, on parole or on other release pending trial, sentencing, appeal or completion of sentence of an offense under Federal, state or local law; and,
(ix) his/her history of compliance with other Court orders;

(3) the nature and seriousness of the danger the person would pose to the community or to any individual member thereof if released; and

(4) any other factors which bear on the risk of willful failure to appear or the danger the person would pose to the community or to any individual members thereof if released.

*Id.* § 40.15(c). Although Defendant has not established that the magistrate judge failed to consider these factors when first imposing the release conditions of $250,000 cash bail, the Court considers these factors as follows:

1.      **Nature of the offense, apparent possibility of conviction, and likely sentence.** As discussed above, Defendant is charged with serious offenses: Attempted Murder, First Degree Robbery, and Armed Carjacking, which are all first degree felonies. If convicted of the charges, Defendant faces a minimum of ten (10) years direct time and up to a maximum of twenty-five (25) years and no portion of the sentence may be suspended or substituted with probation and the first offender sentencing provisions may not be applied. The Magistrate's Complaint sets forth the factual basis for the charges, which are purportedly based upon the alleged Victims' recollections of events, corroborated by multiple witnesses in some instances and security footage. Defendant has an extensive criminal history and his co-defendant entered into a guilty plea which contains a cooperation agreement in which he must testify truthfully in any trial of Defendant Evaristo.

2.      **Defendant's Length of residence on Guam.** Defendant is 29 years old and has lived in Guam his whole life.

3.      **Employment status and history and financial condition.** Defendant was not employed at the time of his arrest and has claimed no assets or identified other financial resources available to him.

4.      **Family ties and relationships.** Defendant listed his girlfriend and his girlfriend's mother as points of contact and as proposed TPCs. He states he has one (1) child who lives with him and his girlfriend.

5.      **Reputation, character and mental and physical condition.** None available.

6.      **Prior criminal record, including record of prior release on recognizance or bail.** Defendant is on parole in two previous felony cases. In March 28, 2018, a bench warrant

was issued in Criminal Felony Case No. CF0343-17 (June 23, 2017), a Bench Warrant was issued for Defendant when he failed to report to probation as ordered. CF0343-17 (*2nd Violation Report*)(March 15, 2018). The Warrant was returned on May 29, 2018. CF0343-17 (*Return of Warrant*)(May 29, 2018). A 3rd Violation Report was filed in that case for Defendant's arrest in this case. CF0343-17 (*3rd Violation Report*)(May 30, 2018).

Defendant is also currently on parole in Criminal Felony Case No. CF0340-18 (June 14, 2018). Defendant was charged in that case with Theft of An Automobile (As a 2nd Degree Felony) and Consipracy to Commit Theft of an Automobile (As a 2nd Degree Felony). The Defendant pled GUILTY to Theft (as a 3rd Degree Felony) and was sentenced to five (5) years of incarceration with all but two years suspended, with credit for time served. *Plea Agreement* at ¶ 8a (Aug. 22, 2019); *Judgment of Conviction* (Aug. 22, 2019).

**7.** **History of drug or alcohol abuse.** None indicated in Ex-Parte Motion, however, the use of amphetamines was indicated on a probation violation report in CF0343-17. *1st Violation Report* (Feb. 26, 2018).

**8.** **Members of the community who will vouch for his/her reliability.** His girlfriend, Keannilyn Quenga, and her mother, Louvina Quenga were presented as TPCs. However, no testimony on Defendant's reliability was presented at the hearing of the Motion. Keannilyn was TPC on Defendant's prior release in his previous felony criminal case CF0173-13.

**9.** **Pendency of other criminal proceedings.** No other proceedings pending.

**10.** **History of compliance with other court orders.** Defendant has a history of non-compliance precipitating the filing of Violation Reports in these and Defendant's other cases as discussed herein. *See* CF0343-17 (three violations filed between February 26, 2018 and May 30, 2018 and a Bench Warrant issued on March 28, 2018).

## B. Setting Least Onerous Conditions under Section 40.20

If a Court finds that a release on his own recognizance would not assure a defendant's appearance or would present a danger to any other person or the community, the Court may still permit release subject to certain conditions under 8 GCA § 40.20. These conditions include:

> (a) Placement of the person in the custody of a designated person or organization agreeing to supervise him/her and to assist him/her in appearing in Court;
> (b) Placement of restrictions on the activities, movements, associations and residence of the person;
> (c) Execution of a bond in an amount specified by the judge; such bond in the discretion of the judge to be either unsecured or secured in whole or in part by the deposit of cash or other property, or by the obligation of qualified sureties;
> (d) Release of the person during working hours, but with the condition that he/she return to custody at specified times; or
> (e) Any other condition reasonably necessary to assure appearance as required and the safety of any other person and the community.

*Id.* § 40.20. Under this section, the least onerous conditions shall be imposed to ensure Defendant's appearance as required and safety of any other person and the community.

### 1. Modifying Bail Amount Requirement

"A detainee's inability to post bail does not inherently make bail excessive. " *Guam v. Tuncap*, 2011 Guam 24, ¶ 12 (citing *People v. Bruneman*, 1996 Guam 3). The Guam Supreme Court has adopted the test for excessiveness of bail from several jurisdictions in *People v. Bruneman*, 1996 Guam 3. "The test for excessiveness of bail is not whether a defendant is financially able to satisfy the requirement, *United States v. McConnell,* 842 F.2d 105, 107 (5th Cir.1988); *United States v. Beaman*, 631 F.2d 85, 86 (6th Cir.1980), but whether **bail is set at an amount higher than reasonably calculated to assure the presence of the accused.**" *People v. Bruneman*, 1996 Guam 3 (citing *U.S. v. Salerno*, 481 U.S. 739, 752 (1987); *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3 (1951)) (emphasis in original). Defendant's bail was set by the magistrate judge at $250,000.00 cash. *Commitment Order* (May 25, 2018). Defendant has failed to established any changed circumstances since the magistrate judge set release conditions upon the posting of the $250,000 cash bail.

## 2. Placement of Defendant in custody of TPCs

Although Keannilyn Quenga, one of the proposed TPCs, previously served as Defendant's TPC in CF0647-11, CF0632-12, CF0173-13 and CM0531-10, the Court is not convinced that, in light of the seriousness of the charges which Defendant currently faces, together with the sentence, if he is convicted of these offenses, that the proposed TPCs would be able to secure Defendant in the residence under house arrest or ensure such compliance with house arrest conditions. Additionally, the Court is concerned with the lack of an immediate remedy or mitigation available should Defendant abscond from the custody of the TPCs even if the TPCs comply with their reporting obligations. As such, the Court finds that placement in custody of the TPCs is not sufficient to convince this Court that Defendant will appear at further court appearances or that his release will not endanger the safety of any other person or the community.

## 3. Execution of a Bond is the least onerous condition.

In support of his motion, Defendant contends that "he should not be considered a flight risk or a danger to the victim or community." (Mot. at p. 2). However, Notice is set forth in the Indictment of the Commission of a Felony while on Felony release. *Indictment* (June 1, 2018). Moreover, the court may take judicial notice that Defendant is currently on parole in two felony matters, Criminal Case Nos. CF0340-18 and CF0343-17.

The People, on the other hand, orally oppose Defendant's release, arguing that other factors weigh in favor of denying Defendant's Motion since the likelihood of conviction is high and the severity of the offense is great. The People inform the Court that the victims in this case oppose the Defendants release on his own recognizance or to TPCs.

Considering the significant factors set forth in Section 40.15(c), including, in particular, the nature of the offense charged, the apparent possibility of conviction and the likely sentence, the nature and seriousness of the danger the person would pose to the community or to any individual member thereof if released, and any other factors which bear on the risk of willful failure to appear or the danger the person would pose to the community or to any individual

members thereof if released, based upon the Defendants extensive criminal history, the likelihood of conviction and the averments in the Indictment and Magistrate Complaint, the Court is greatly concerned with the safety of the community and any remedy available to the Court should the Defendant violate any terms of his pre-trial release if he were released without the risk of forfeiting a bond or bail. Moreover, although the Court does not find that the TPCs, without the assistance of electronic monitoring, would be able to successfully demand Defendant's conformity to the pre-trial release conditions, including any house arrest mandates. Accordingly, the Court finds that the magnistrate judge imposed the least onerous condition under the circumstances of $250,000 cash bond and DENIES DEFENDANT'S MOTION FOR RELEASE ON HIS OWN RECOGNIZANCE .

## Conclusion

For the reasons set forth above, the Court hereby DENIES Defendant's Motion for Release on his own recognizance or in the alternative to TPCs. Trial dates shall be issued under separate Order.

**SO ORDERED** this _____ JAN 1 3 2021 _____.

**HONORABLE MARIA T. CENZON**
JUDGE, SUPERIOR COURT OF GUAM

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
AG, John Terlaje.

Date: 1/13/21 Time: 11:53am
Antonio A Cruz
Deputy Clerk, Superior Court of Guam